**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

UNITED STATES OF AMERICA

v.   Case No. 6:13-cr-99-Orl-37KRS

JAMES FIDEL SOTOLONGO;
STEPHANIE MUSSELWHITE; and
RAMARA GARRETT

---

**ORDER**

This cause is before the Court on the following:

1. Motion to Suppress and Return Physical Evidence (Doc. 123), filed January 31, 2014; and

2. Government's Response in Opposition to Motion to Suppress and Return Physical Evidence (Doc. 148), filed February 10, 2014.

Upon consideration, the Court finds that the motion is due to be denied.

**BACKGROUND**

On January 31, 2013, in connection with its investigation into the Sotolongo Mortgage Fraud Ring ("SMFR"), the FBI applied for a warrant to search a "warehouse-type office building" owned by Waverly Media, LLC. (Doc. 148-1.) In the supporting affidavit, FBI Special Agent Robichaud indicated that Waverly Media was owned in part by Stephanie Musselwhite, James Sotolongo, and Ramara Garrett—three alleged members of the SMFR. (Doc. 148-4, ¶¶ 2, 45.) According to Special Agent Robichaud, cooperating witnesses had represented to the FBI that computers and bookkeeping software formerly used by SMFR members at other businesses had recently been moved to the Waverly Media premises. (*Id.* ¶¶ 46–52.) The FBI believed that evidence of

mortgage fraud could be found on those computers and in business records located at the warehouse. (*Id.* ¶ 4.)

Based on the FBI's representations, Magistrate Judge Smith issued the requested warrant. (Doc. 148-2, p. 2.) The warrant permitted the search of the Waverly Media premises and the seizure of business records belonging to James Sotolongo, Ramara Garrett, and several listed business entities. (Doc. 148-3, p. 1.) Waverly Media, LLC was not listed among the targeted businesses. (*Id.*) The warrant also authorized the seizure of "[c]omputers and computer storage media" evincing the SMFR's illegal activities. (*Id.* at 2.) The FBI executed the warrant that day, making derivative copies of some computers and seizing others outright. (*See* Doc. 148-5.) Agents also seized several boxes of documents, some of which belonged to Waverly Media. (*Id.*)

Defendant Musselwhite now moves to suppress the results of the search.[1] (Doc. 123.) The Government opposes. (Doc. 148.) The Court held a suppression hearing on February 19, 2014. (Doc. 166.) This matter is now ripe for the Court's adjudication.

**STANDARDS**

The Fourth Amendment requires warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. When a search exceeds the scope of a warrant, "evidence obtained in that search may be excluded." *United States v. Hendrixson*, 234 F.3d 494, 497 (11th Cir. 2000). However, "[o]nly the evidence seized while [law enforcement officers] are acting outside of the boundaries of the warrant is subject to suppression." *Id.* "Total suppression may be

---

[1] Defendants Sotolongo and Garrett have adopted Musselwhite's motion. (Docs. 147, 150.)

2

appropriate where the executing officer's conduct exceeds any reasonable interpretation of the warrant's provisions." *United States v. Wuagneux*, 683 F.2d 1343, 1354 (11th Cir. 1982.)

## DISCUSSION

Musselwhite moves to suppress the fruits of the Waverly Media search in their entirety. (Doc. 123, ¶ 7.) She argues that, as a media entity, Waverly Media was entitled to heightened protections under the First Amendment which required the FBI agents searching its premises to execute the warrant with "scrupulous exactitude." (*Id.* ¶ 3.) Thus, she contends that, by seizing Waverly Media documents when the warrant did not explicitly list Waverly Media among those businesses whose records could be permissibly targeted, the FBI so far exceeded the terms of the warrant as to render its execution a general search, requiring total suppression. (*Id.*) The Court disagrees.

As a threshold matter, the Court doubts that Musselwhite has standing to assert Waverly Media's Fourth Amendment rights. "When corporate property is seized or searched, an individual cannot assert the corporation's Fourth Amendment rights absent a showing that [she] had an independent privacy interest in the goods seized or the area searched." *United States v. Vicknair*, 610 F.2d 372, 379 (5th Cir. 1980). Here, Musselwhite has failed to make such a showing; she has not produced any evidence that she personally worked at the warehouse, that she prepared any of the documents seized, that she was present during the search, or that she exhibited in any other manner an individualized, reasonable expectation of privacy in the area and objects that were the subject of the warrant. *See United States v. Britt*, 508 F.2d 1052 (5th Cir. 1975) (holding that a defendant lacked standing to challenge a similar search of a corporate warehouse).

"The interest of a stockholder and corporate officer in the property of the corporation is not sufficient to provide that stockholder, in [her] individual capacity, with standing." *United States v. Bush*, 582 F.2d 1016, 1018 (5th Cir. 1978).

Regardless, even assuming that Musselwhite has standing, the execution of the Waverly Media warrant was reasonable. Contrary to Musselwhite's assertion, Waverly Media's status as a media entity does not confer upon it any heightened protections from the searches and seizures at issue in this case. The proposition that Fourth Amendment protections must be applied with "scrupulous exactitude" when cases involve First Amendment protected activity stems from *Stanford v. State of Texas*, 379 U.S. 476, 486 (1965), in which the U.S. Supreme Court held unconstitutional a warrant authorizing Texas law enforcement officers to seize any of a defendant's writings "concerning the Communist Party of Texas." After noting that the history of the Fourth Amendment is "largely a history of conflict between the Crown and the press," the Court cautioned that "what this history indispensably teaches is that the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, *and the basis for their seizure is the ideas which they contain*."[2] *Id.* at 485 (emphasis added).

Unlike the communist literature sought in *Stanford*, the "things to be seized" in the Waverly Media search were principally financial records—Quicken data files, tax-

---

[2] Notably, these heightened protections function to minimize the executing officers' discretion to determine which writings deserve seizure. *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978) ("Where presumptively protected materials are sought to be seized, the warrant requirement should be administered to leave as little as possible to the discretion or whim of the officer in the field."). Musselwhite's contention here is not that the agents were prejudicially selective in their seizures; it is that they cast too wide a net in their search.

preparation software data (such as "Turbo Tax" files), ledgers, financial reports, loan applications, real estate closing documents, Excel spreadsheets, and related emails and memoranda. (Doc. 148-3.) These records were not seized on the basis of any protected expression memorialized within them, at least not in the sense contemplated by *Stanford*; they were seized because they potentially contained transactional evidence of the SMFR's mortgage fraud scheme. (*See* Doc. 148-4, ¶¶ 45–60 (indicating the FBI's belief that records stored at Waverly Media would reveal transactions between financial institutions and the business entities controlled by alleged SMFR members).) That this information was stored at a media company rather than a different type of business is incidental to the justifications for the search, and Musselwhite has not demonstrated that the search of Waverly Media jeopardized protected expression or otherwise justified adherence to the terms of the warrant with heightened rigidity.

To the contrary, the Waverly Media search was part of an investigation into a sophisticated mortgage fraud ring, and "the Supreme Court has recognized that effective investigation of complex white-collar crimes may require the assembly of a 'paper puzzle' from a large number of seemingly innocuous pieces of individual evidence." *Wuagneux*, 683 F.2d at 1349; *see also United States v. Accardo*, 749 F.2d 1477, 1481 (11th Cir. 1985). In such cases, the U.S. Court of Appeals for the Eleventh Circuit has instructed reviewing courts to read warrants with "practical flexibility." *Wuagneux*, 683 F.2d at 1349 ("[I]n cases . . . involving complex financial transactions and widespread allegations of various types of fraud, reading the warrant with practical flexibility entails an awareness of the difficulty of piecing together the 'paper puzzle.'"). This flexibility extends both to warrant's drafting, *see id.* (recognizing that the particularity requirement must be applied

5

with "a practical margin of flexibility"), and to its execution, *see United States v. Schandl*, 947 F.2d 462, 465 (11th Cir. 1991) (determining in a complex tax-evasion investigation that "[t]he seizure of items not covered by a warrant does not automatically invalidate an otherwise valid search" and that "[t]he critical inquiry is always 'whether the search and seizures were reasonable under all the circumstances'" (quoting *Wuagneux*, 683 F.2d at 1352)).

Here, the warrant authorized the seizure of James Sotolongo and Ramara Garrett's business records. (Doc. 148-3, p. 1.) As indicated in the warrant's supporting affidavit, Sotolongo and Garrett were both partial owners of Waverly Media, and "corporate records listed Garrett as the manager." (Doc. 148-4, ¶¶ 16, 45.) Thus, although Waverly Media was not explicitly listed among those businesses whose records could be seized, it does not require an overly flexible reading of the warrant to conclude that the company's documents fell within its scope. Moreover, though there is little doubt that many of the Waverly Media records seized are irrelevant to the mortgage fraud scheme, like the search upheld in *Schandl*, it was "inevitable that some irrelevant materials would be seized" from the Waverly Media premises. *Schandl*, 947 F.2d at 465. Bank fraud is a crime of the sort that is "generally only detected through the careful analysis and synthesis of a large number of documents," and the agents were not required to make an on-site determination of a file's relevance before removing it from the warehouse. *Id.* "To insist on such a practice would substantially increase the time required to conduct the search, thereby aggravating the intrusiveness of the search." *Id.* at 466 (citations and internal quotation marks omitted).

In sum, the FBI agents reasonably executed the Waverly Media Search warrant

and therefore Musselwhite's motion to suppress (Doc. 123) is due to be denied. As Musselwhite is not a "person aggrieved" by an unlawful search or seizure, Federal Rule of Criminal Procedure 41(g) does not require the return of any relevant evidence seized. However, as indicated at the suppression hearing, the Government remains directed to facilitate the return of all irrelevant property seized during the Waverly Media search, and the parties are directed to file a status report on or before Monday, March 3, 2014, if any issues regarding the return remain outstanding. (*See* Doc. 166.)

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Motion to Suppress and Return Physical Evidence (Doc. 123) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on February 26, 2014.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

7